# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Tanya S.,

               Plaintiff,

v.

Martin J. O'Malley, Commissioner of
Social Security Administration,

               Defendant.

Case No. 23-cv-1416 (ECW)

**ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration Martin J. O'Malley ("the Commissioner") denying the application of Tanya S. ("Plaintiff") for disability benefits under the Social Security Disability program.  The parties have filed briefs "present[ing] for decision" Plaintiff's request for judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").[1]  (*See* Dkts. 14, 16, 19.)  For the reasons stated below, Plaintiff's request for reversal or remand of the Commissioner's decision (Dkt. 14) is denied and the Commissioner's request that the Court affirm the Commissioner's decision (Dkt. 16) is granted.

---

[1]      As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision on the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5.

## I.    BACKGROUND

Plaintiff filed applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") on September 4, 2019, alleging a disabling condition beginning on April 1, 2019.  (R. 338-343, 344-345.)[2]  Plaintiff later amended her disability onset date to July 1, 2019.  (R. 48-49.)  Plaintiff's applications were denied initially and on reconsideration.  (R. 84, 85, 115, 116.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ David Washington held a hearing on June 1, 2021.  (R. 66-83.)  Because ALJ Washington retired before issuing a decision, a second hearing was held before a different ALJ, Trina Mengesha-Brown, on August 10, 2022.  (R. 41-65.)  ALJ Mengesha-Brown (also referred to as "the ALJ" in this Order) issued her decision denying Plaintiff benefits on August 26, 2022.  (R. 14.)  The Appeals Council denied review on March 22, 2023, making ALJ Mengesha-Brown's decision the final decision of Commissioner.  (R. 1-6.)  *See* 42 U.S.C. § 405(h); *see also* 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Dkt. 1 at 1.)

The Eighth Circuit has described the five-step process established by the Commissioner for determining if an individual is disabled as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant's impairments are so severe that they significantly limit the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has impairments that meet or equal a presumptively disabling impairment specified in the regulations; (4) whether the claimant's [residual functional capacity ("RFC")]  is sufficient for her to perform her past work; and finally, if the claimant cannot perform her past

---

[2]    The Social Security Administrative Record ("R.") is available at Dkt. 13.

work, the burden shifts to the Commissioner to prove that (5) there are other jobs in the national economy that the claimant can perform given the claimant's RFC, age, education and work experience.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

The ALJ in this matter followed the sequential evaluation process and made the following findings: At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2019. (R. 20.)

At step two, the ALJ determined Plaintiff had the following severe impairments that significantly limit Plaintiff's ability to perform basic work activities: cervical myelopathy status-post disc replacement surgery, neurogenic bladder, obesity, major depressive disorder, and acute kidney insufficiency. (R. 20.)

At step three, the ALJ determined Plaintiff's impairment or combination of impairments did not meet or equal a listing in 20 CFR Part 404, Subpart P, Appendix 1. (R. 21-23.)

At step four, the ALJ found Plaintiff's residual functional capacity ("RFC") was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing (as balance is defined in the SCO), stooping, kneeling, crouching, and crawling; frequent reaching to shoulder height bilaterally; occasional reaching above shoulder height bilaterally; no work requiring repetitive twisting of neck from side to side or requiring extended use of computers; the avoidance of all unprotected heights, workplace hazards, and moving machinery; the avoidance of wet, slippery, and uneven surfaces; the claimant requires the use of a cane for ambulation greater than 50 feet; no pushing or pulling with the lower extremities; occasional pushing and pulling a maximum of 5 pounds with the

upper extremities; no work with vibrations; no operating foot controls; the claimant requires access to the restroom within close proximity of the workstation; simple, routine tasks and no production pace work; occasional interactions with supervisors, co-workers, and the public; and occasional changes to a routine work setting.

(R. 24.)  Based on that RFC finding, the ALJ found Plaintiff was unable to perform any past relevant work.  (R. 30.)

Finally, at step five, the ALJ concluded that, given Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. 30-31.)  In making this determination, the ALJ relied on the testimony of a vocational expert that Plaintiff would be able to perform the following jobs: semiconductor bonder, Dictionary of Occupational Titles ("DOT") number 726.685-066 (22,000 jobs available nationally); circuit layout taper, DOT number 017.684-010 (10,000 jobs available nationally); and touch-up screener, DOT number 726.684-110 (26,000 jobs available nationally).  (R. 32.)

## II.    LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018).  As defined by the Supreme Court:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of

4

> "substantial" in other contexts, the threshold for such evidentiary sufficiency
> is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—
> and means only—such relevant evidence as a reasonable mind might accept
> as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (marks and citations omitted).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Nash*, 907 F.3d at 1089 (marks and citation omitted).  "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome."  *Id.*  "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision."  *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

As to the weight assigned to medical opinions and administrative medical findings, pursuant to §§ 404.1520c and 416.920c of the Social Security Administration's ("SSA") regulations: "[An ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  When a medical source provides one or more medical opinions or prior administrative medical findings, the ALJ will consider those medical opinions or prior administrative medical findings from that medical source together using the following factors: (1) supportability, (2) consistency, (3) relationship with the

5

claimant (including length and purpose of treatment and frequency of examinations, among other factors), (4) specialization, and (5) other factors (for example, when a medical source has familiarity with the other evidence in the claim). 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The most important factors an ALJ considers when the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The SSA further states:

The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022) ("The 'most important factors' are supportability and consistency.") (citing 20 C.F.R. § 404.1520c(b)(2)).

The SSA has described supportability and consistency as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  Revisions to Rules, 82 Fed. Reg. at 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1).  "An ALJ's discussion of [a medical source's] treatment and examination notes reflects the ALJ's consideration of the supportability factor with respect to their opinions."  *Stephanie B. v. Kijakazi*, No. CV 22-837 (JWB/DTS), 2023 WL 3394594, at *1 (D. Minn. May 11, 2023) (citation omitted); *Troy L. M. v. Kijakazi*, No. 21-CV-199 (TNL), 2022 WL 4540107, at *11 (D. Minn. Sept. 28, 2022) (addressing the consistency of the medical source's treatment records with the opinion provided as to functioning in conjunction to supportability).  "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2).

The Court has reviewed the entire record and will incorporate the record only as necessary to explain this Order.

### III.   DISCUSSION

Plaintiff challenges the ALJ's denial of benefits on several grounds.  (*See* Dkt. 14.) First, Plaintiff argues that Acting Commissioner Berryhill's appointment was not effective and that the proceedings conducted before ALJ Mengesha-Brown are therefore a

nullity, necessitating remand regardless of whether errors were committed.  (*Id.* at 41-46.)

Second, Plaintiff argues that the ALJ did not fully and fairly develop the record in several

respects, including as to Listing 1.15 and the testimony at the first hearing of Andrew

Steiner, MD.  (*Id.* at 34-39.)  Third, Plaintiff argues that the ALJ did not articulate

sufficient reasons for finding the opinions of Steven Jackson, MD, not persuasive.  (*Id.* at

40-41.)  Fourth, Plaintiff argues that the ALJ's erroneous inferences and "playing doctor"

requires remand.  (*Id.* at 39.)  Fifth, and finally, Plaintiff argues that the ALJ erred in

concluding at step five that jobs existed in significant numbers in the national economy

that she could perform because "there was an apparent conflict between the vocational

expert's testimony concerning two of the other work jobs identified and the requirements

of those jobs per the DOT" and because the ALJ did not ensure there were some jobs at

the regional level to guarantee "an isolated job" (the third job) was not being relied on to

deny Plaintiff's claim.  (*Id.* at 31-34.)

**A.     ALJ Mengesha-Brown Was Constitutionally Appointed**

The Court first addresses Plaintiff's challenge to ALJ Mengesha-Brown's

authority.  Plaintiff contends that Acting Commissioner Berryhill had a lapse in her

authority under the Federal Vacancies Reform Act and was not validly serving as Acting

Commissioner when she appointed ALJs, meaning that ALJ Mengesha-Brown, who

issued the final decision in this matter, was improperly appointed.  (Dkt. 14 at 41-46.)

The Eighth Circuit addressed this issue in *Dahle v. Kijakazi* and held that Berryhill was

properly serving as Acting Commissioner when she ratified the appointment of SSA

ALJs.  62 F.4th 424, 429 (8th Cir. 2023), *cert. denied sub nom*. *Dahle v. O'Malley*, 144 S.

Ct. 549 (2024).[3]  This "District Court . . . is bound . . . to apply the precedent of this Circuit."  *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (citation omitted). Accordingly, Plaintiff's argument is foreclosed under controlling Eighth Circuit precedent and must be rejected here.

**B.    Listing 1.15, Weight Assigned to Dr. Steiner's and Dr. Jackson's Opinions, and Development of the Record**

As background, at Plaintiff's first hearing, medical expert Andrew Steiner, MD, testified that Plaintiff's "spasticity and the sensory loss in the lower extremities, leading through [sic] an abnormal gait, would allow for an equaling of [Listing] 1.15."  (R. 81.) Listing 1.15 relates to "Disorders of the skeletal spine resulting in compromise of a nerve root(s)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15.  Relevant to this Order, Listing 1.15 requires (among other things) "[a] documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands" or an inability to use one or both upper extremities under circumstances not relevant here.  *Id.* (citations omitted).

At the first hearing, ALJ Washington stated that vocational testimony was not necessary based on Dr. Steiner's testimony "that the Claimant's condition equals listing 1.15" and terminated the hearing.  (R. 82.)  However, ALJ Washington never issued a decision and ALJ Mengesha-Brown later determined a second hearing was necessary to make a proper decision.  (R. 43.)  After that hearing, ALJ Mengesha-Brown found

---

[3]    At the time of Plaintiff's reply brief, a petition for a writ of certiorari was pending before the Supreme Court in *Dahle*, but that petition has since been denied.

Plaintiff was not disabled and denied benefits.  (R. 32-33.)  This resulted in an unfortunate situation where Plaintiff believed she would be awarded benefits after the first hearing (*see* Dkt. 14 at 35; Dkt. 19 at 11), but was then denied benefits after a different ALJ was assigned to her claim (*see* R. 17-33 (ALJ Mengesha-Brown's decision denying benefits)).  Plaintiff does not suggest that ALJ Washington made a binding decision at the first hearing; rather, she suggests that ALJ Mengesha-Brown's conclusion that Dr. Steiner's opinions were unpersuasive (R. 21) meant the ALJ should have further developed the record (Dkt. 14 at 36-37; Dkt. 19 at 11-13).

In this regard, Plaintiff challenges several related aspects of the ALJ's decision. She argues that the ALJ's decision to discount Dr. Steiner's decision was in error and did not meet the articulation requirements of 20 C.F.R. § 404.1520c(b)(2).  (Dkt. 14 at 36-38, Dkt. 19 at 12-13.)  Plaintiff also argues that the ALJ's decision to discount Dr. Jackson's opinions did not meet the articulation requirements of 20 C.F.R. § 404.1520c(b)(2) and was in error.  (Dkt. 14 at 40-41; Dkt. 19 at 15-16.)  Along these lines, Plaintiff argues that the ALJ's conclusion that there was no evidence of a medically documented need for a walker was in error, including because the ALJ believed a prescription was required to show a walker was medically necessary.  (*See, e.g.*, Dkt. 14 at 41; Dkt. 19 at 15-16.) Plaintiff further argues that the ALJ had a duty to further develop the record in view of these decisions and other issues relating to Plaintiff's handling limitations, lumbar spine, and left ankle.  (Dkt. 14 at 37-38; Dkt. 19 at 14.)

Before turning to these challenges, the Court notes the parties' disagreement about what evidence is required to show a walker is medically necessary.  Plaintiff argues that a

"specific prescription is not required."  (Dkt. 14 at 37, Dkt. 19 at 15.)  According to

Plaintiff, the ALJ "placed too much importance on the lack of a walker prescription being

readily found in this record" and "erred by not understanding that assistive devices do not

need proof of a prescription to be considered medically necessary."  (Dkt. 19 at 15.)  The

Commissioner acknowledges that Plaintiff was prescribed a cane and that "a medical

prescription **or documentation** for an assistive device is relevant to both Listing 1.15"

and the RFC, but also argues (somewhat confusingly) that "Plaintiff's claim that she did

not need a prescription for a walker conflicts with Social Security authority."  (Dkt. 16 at

20-21 (emphasis added).)

 "As the Courts of this District have recognized, the Eighth Circuit Court of

Appeals has not addressed what specific documentation a claimant must provide to

establish the limitations of a medically required hand-held assistive device."  *Mya Y. v.

Saul*, No. 20-CV-1296 (JRT/LIB), 2021 WL 3023691, at *5 (D. Minn. June 28, 2021), *R.

& R. adopted*, No. CV 20-1296 (JRT/LIB), 2021 WL 3022723 (D. Minn. July 16, 2021)

(citing *Patricia M. v. Saul*, No. 18-cv-3462 (DSD/HB), 2020 WL 3633218, at *8 (D.

Minn. Feb. 5, 2020), *R. & R. adopted sub nom. McArdell v. Saul*, 2020 WL 1951748 (D.

Minn. Apr. 23, 2020); *Edwards v. Berryhill*, No. 5:17-cv-5092 (KES), 2019 WL 1320314,

at *14 (D.S.D. Mar. 22, 2019)).  Given the lack of Eighth Circuit guidance, "the Courts of

this District and other Districts within the Eighth Circuit have cited favorabl[y] to the

Third, Seventh, and Tenth Circuits which have required an unambiguous opinion from a

physician stating the circumstance in which the assistive device is medically necessary."

*Id.* (collecting cases).  The Seventh Circuit has found a one-time treating physician's

statement that the claimant "does need a crutch" lacked the specificity to establish whether the crutch was a medical necessity or was merely a restatement of what was reported by the claimant.  *Tripp v. Astrue*, 489 F. App'x 951, 953-54 (7th Cir. 2012).  The Third Circuit found that the evidence did not establish the claimant's cane was medically necessary when the treating physician provided a "script" for a cane and checked a box labelled "hand-held assistive device medically required for ambulation" in a report. *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002).  Courts in this District have synthesized the law as "the plaintiff 'must show the cane is medically required by offering medical documentation that (1) demonstrates the cane is necessary to help her walk or stand and (2) describes the circumstances in which the device is needed.'"  *Mya Y.*, 2021 WL 3023691, at *5 (quoting *Patricia M.*, 2020 WL 3633218, at *7).

With this legal standard in mind, the Court turns to Plaintiff's arguments.

**1.      Weight Assigned to Dr. Steiner's and Dr. Jackson's Opinions**

At the first hearing, Dr. Steiner testified that he believed Plaintiff's spasticity and sensory loss in her lower extremities, leading to an abnormal gait, medically equaled Listing 1.15.  (R. 81.)  ALJ Mengesha-Brown found this testimony unpersuasive for several reasons, including because Dr. Steiner's "testimony was limited and he did not articulate the specific basis for his opinion."  (R. 21.)  ALJ Mengesha-Brown further noted "there is no evidence of a documented need for a walker, bilateral cane, bilateral crutches, or a wheeled and seated mobility device" and explained:

> Likewise, the record supports use of a cane but not a walker. Her gait, while somewhat abnormal, is not severe enough to support use of walker/wheeled device. Her gait is described as slow/stiff but steady without the use of an

assistive device. (*See e.g.*, 7F/85; 8F/8; 13F/40). The claimant was issued a cane by her physical therapist. (7F/92). She has not been prescribed a walker. Notably, more recent records show improvement/stability in her lower extremity spasticity. (*See e.g.*, 13F/12; 22F/512).

(R. 21.)

The Court agrees that Dr. Steiner's testimony was limited. Beginning with the need for a walker—which Plaintiff does not dispute would be necessary for a medical equivalence finding—Dr. Steiner did not specifically testify that Plaintiff required a walker. Further, none of the records cited by Dr. Steiner demonstrate that a walker was medically necessary. (*See, e.g.*, R. 81-82 (Dr. Steiner relying on R. 1221-22 (13F/12-13), R. 1226 (13F/17), R. 1249 (13F/40), R. 752 (4F/15) (R. 833 (5F/8).) Indeed, Plaintiff has not identified any record cited by Dr. Steiner that shows a walker was medically necessary.

Instead, Plaintiff focuses on the fact that Dr. Jackson's opinions were consistent with Dr. Steiner's conclusion. (Dkt. 14 at 37-38; Dkt. 19 at 11-12.) But because the ALJ discounted Dr. Jackson's opinions (R. 27-28), Plaintiff also argues the ALJ did not comply with the articulation requirements of the regulations and was in error when discounting Dr. Jackson's opinions (Dkt. 14 at 40-41; Dkt. 19 at 15-16). The Court therefore turns to the weight assigned to Dr. Jackson's opinions.

In a Medical Source Statement ("MSS") dated May 20, 2021 and a second MSS dated August 8, 2022, Dr. Jackson circled a paragraph indicating Plaintiff had a "documented medical need" for a walker consistent with that requirement in Listing 1.15. (R. 1429 (May 20, 2021 MSS), R. 2528 (August 8, 2022 MSS).) As stated above, an ALJ

must address supportability and consistency when assessing the persuasiveness of a medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Here, the ALJ found Dr. Jackson's opinions that Plaintiff required a walker unpersuasive because they were "not supported by Dr. Jackson's own examination notes," including those describing Plaintiff's gait as "slow/stiff but steady (sans assistive device)."  (R. 28.)  The ALJ further found that Dr. Jackson's opinions were not consistent with medical evidence that Plaintiff had been "prescribed a cane but not a walker."  (R. 28.)

Substantial evidence supports the ALJ's conclusions as to Dr. Jackson's opinions. Physical Therapist ("PT") Michael G. Lauer prescribed a cane for Plaintiff on December 6, 2019 (R. 968), but, as the ALJ noted, there is no medical evidence that any medical provider prescribed a walker for Plaintiff.  Instead, Plaintiff appears to have ordered a walker of her own accord in April 2021.  (R. 1346 (April 7, 2021 therapy notes stating: "She ordered a walker.").)  As the ALJ noted, other medical records supported use of a cane but not a walker.  (R. 21.)  The ALJ's finding that Dr. Jackson's opinions were not consistent with Plaintiff's documented prescriptions is supported by substantial evidence. Further, multiple medical records indicate that even after acquiring a walker, Plaintiff continued to use a cane in the "community" but used the walker at home.  (R. 1994 (August 10, 2021 Occupational Therapy notes stating: "Uses walker in the house- uses cane in community (occasionally walker depending on the day)" and "Ambulation: primarily uses walker in home and SEC in community; depending on day and fatigue level may bring walker into community"), R. 2042 (same as of September 9, 2021), R. 2070 (same as of September 15, 2021), R. 2018 (same as of September 23, 2021), R.

2393 (Dr. Jackson's March 15, 2022 notes stating Plaintiff "ambulates with her cane").)

The ALJ also correctly noted that Dr. Jackson had documented Plaintiff's gait as slow, stiff, but steady on September 13, 2019 (R. 962), "slow, steady, wide based" on March 6, 2020 (R. 1001), and "slow, steady, wide based" on June 12, 2020 (R. 1250). Plaintiff has not identified any error in the ALJ's summary of Dr. Jackson's observations of Plaintiff's gait. For these reasons, the Court finds the ALJ's decision to discount Dr. Jackson's opinions that Plaintiff required a walker complied with the articulation requirement as to supportability and consistency and is supported by substantial evidence.

Turning back to Dr. Steiner's opinion as to Listing 1.15 in general, the ALJ also explained that "the evidence does not show the requisite muscle weakness and signs of nerve root irritation, or sensory changes in the prescribed manner." (R. 21.) Dr. Steiner provided no explanation as to his Listing 1.15 conclusion. His brief testimony and general citation to certain exhibits is insufficient to support a finding that Plaintiff's conditions medically equaled the detailed requirements of paragraphs A-D of Listing 1.15.[4] *See Gayla J. C. v. Kijakazi*, No. 21-CV-1687 (TNL), 2022 WL 4017504, at *9 (D.

---

[4] Listing 1.15 requires documentation of paragraphs A, B, C, and D below:

A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):

1. Pain; or

2. Paresthesia; or

3. Muscle fatigue.

AND

B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:

1. Muscle weakness; and

2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and

3. Sensory changes evidenced by:

a. Decreased sensation; or

b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or

4. Decreased deep tendon reflexes.

AND

C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

Minn. Sept. 2, 2022) (finding no error in ALJ's discounting of physician's opinion where it was "conclusory" and did "not provide an assessment of Plaintiff's limitations"). The ALJ's finding that Dr. Steiner's opinion was not persuasive complied with the articulation requirements and is supported by substantial evidence.

## 2.   Documented Medical Need for a Walker

The Court turns to Plaintiff's argument that the evidence showed a documented medical need for a walker. Plaintiff cites her testimony that her walker was prescribed, various medical records noting her use of a walker, and Dr. Jackson's medical opinions as demonstrating a documented medical need for a walker. (Dkt. 14 at 36-37, Dkt. 19 at 15-16.) The Commissioner responds by arguing that "[w]hile notes showed Plaintiff had ordered a walker in 2021, Plaintiff does not contend that a medical professional prescribed it" and "she did not provide medical documentation for a walker and her medical records showed she did not use one with any consistency." (Dkt. 16 at 21-22.)

As discussed above, "[c]ourts typically require 'an unambiguous opinion from a physician stating the circumstances in which the assistive device is medically necessary.'" *Harrington v. Kijakazi*, No. CV 22-471 (JRT/ECW), 2023 WL 2524029, at *6 (D. Minn. Mar. 15, 2023) (quoting *Mya Y.*, 2021 WL 3023691, at *4). Dr. Jackson's opinions are the only medical opinions stating that Plaintiff needs a walker, but as

---

3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15.

discussed above, the ALJ's decision to discount those opinions are supported by substantial evidence. Even if Dr. Jackson's opinions were considered, they are simply circled paragraphs indicating a "documented medical need" for a walker. (R. 1429 (May 20, 2021 MSS), R. 2528 (August 8, 2022 MSS).) This does not constitute an opinion identifying the "circumstances in which [a walker] is medically necessary" for Plaintiff, and the medical record is otherwise insufficient to establish a walker was medically necessary. *See Tripp*, 489 F. App'x at 954 ("In our view, the record adequately supports the finding of no medical necessity. The record is replete with references to Tripp's use of 'crutches,' 'a crutch,' or 'a cane,' but these mentions are traceable to his self-reports and to physicians' observations that he presented with an assistive device. Even the statement of Dr. Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp 'does need a crutch,' lacks the specificity necessary to determine whether this was the doctor's medical opinion or merely a restatement of what was told to him by Tripp."); *Howze*, 53 F. App'x at 222 ("The references in the record include a reference by Dr. Khan to a 'script' for a cane; in addition, Dr. Khan checked the box for 'hand-held assistive device medically required for ambulation' in his 1998 report. Other than that, there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary.").

Other medical evidence supports the ALJ's conclusion that a walker was not medically necessary. The ALJ identified the medical records she relied on when finding Plaintiff did not require a walker, including Dr. Jackson's treating notes discussed above

(R. 28), PT Lauer's prescription for a cane but not a walker (R. 25, 28), and medical notes documenting "moderate bilateral lower extremity spasticity," but "more recent records show improvement/stability in lower extremity spasticity" (R. 25). Indeed, many of the medical records relied on by Plaintiff suggest that a walker was not medically necessary. (*See* Dkt. 14 at 39 (citing R. 1994, R. 2042, R. 2070, R. 2083).) Many of these records are from August and September 2021 (R. 1994, R. 2042, R. 2070, R. 2083), shortly after the July 22, 2021 physical therapy discharge summary relied on by Plaintiff indicating she had an unmet goal of being able to walk a full block with a walker or walking poles (Dkt. 14 at 39 (citing R. 1955)). This temporal proximity undermines Plaintiff's reliance on this discharge summary. Further, the July 22, 2021 discharge summary states that Plaintiff was "[p]rimarily using" a cane in her right upper extremity to support her left lower extremity and a walker "for mobility **which therapist has not seen in some time**." (R. 1955 (July 22, 2021 discharge summary).) Regardless of whether Plaintiff met her goals when discharged from physical therapy, the fact that PT Lauer had not seen her walker is evidence that a walker was not medically necessary.

In sum, while Plaintiff has identified some records documenting her use of a walker (at least under certain circumstances), as noted by the ALJ, the record contains other medical evidence that she did not require a walker. "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Nash*, 907 F.3d at 1089 (marks and citation omitted). The Court finds the ALJ's conclusion that "there is no evidence of a medically documented need for

19

a walker" is supported by substantial evidence.  Further, while the ALJ noted that Plaintiff had not been prescribed with a walker, she relied on other medical evidence to support her conclusion and did not rely solely on the lack of a prescription.  (R. 21.)  The Court finds no legal error in the ALJ's analysis.

### 3.    Further Development of the Record

Plaintiff argues that the ALJ had a duty to further develop the record as to Plaintiff's need for a walker as well as with respect to her cervical spine MRI, handling restrictions, lumbar spine issues, and left ankle.  (Dkt. 14 at 37-38.)  An ALJ is required to develop the record "only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011); *see also Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) ("An ALJ is not required to seek clarifying statements from a treating physician unless a crucial issue is undeveloped.") (quotation marks omitted).

As discussed above, there was sufficient medical evidence from which the ALJ could find a walker was not medically necessary.  Plaintiff suggests that her testimony that she was prescribed a walker gave rise to a duty to further develop the record.  (Dkt. 14 at 36-37; Dkt. 19 at 15-16.)  Her testimony is not medical evidence and Plaintiff has not identified any medical evidence showing a walker was prescribed.  The relevant question is whether the ALJ had "sufficient medical evidence," *see Martise*, 641 F.3d at

926-27, not whether Plaintiff believed she was prescribed a walker. The ALJ was not required to further develop the record as to whether a walker was medically necessary.[5]

Next, Plaintiff argues that the ALJ should have further developed the record regarding her handling limitations. In particular, she argues that the ALJ's rejection of manipulative limitations warranted additional review by a medical expert, preferably after a physical examination, especially given the ALJ's rejection of the agency medical consultants' opinions as to manipulative limitations and the results of her grip/pinch strength testing. (Dkt. 14 at 38 & n.5.) But other medical records show that Plaintiff had full hand strength. (*See, e.g.*, R. 962 (noting "full strength throughout"), 1003 (same).) Where decreased hand strength was observed in physical therapy notes, the "grip" and "lateral/key pinch grip" hand strength ((R. 2012, 2042) exceeded the ALJ's finding that Plaintiff could handle 5 pounds (R. 24). Further, Dr. Jackson opined in his May 20, 2021 MSS that Plaintiff did not have significant limitations with reaching, handling, or fingering. (R. 1432.) He indicated at other times that Plaintiff had no arm or hands limitations. (R. 1418 (September 17, 2019 Restrictions and Limitations Questionnaire), R. 2531 (MSS dated August 8, 2022).) "[I]f it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R.*, 2020 WL 5642489, at *3. Given this standard, the

---

[5]   Because the Court finds the ALJ's conclusion that there was no evidence of a documented medical need for a walker is supported by substantial evidence and that no further development of the record was required on this point, the Court need not and does not address Plaintiff's argument that her "October 29, 2021, cervical spine MRI was also consistent with continuing to medically equal Listing 1.15" (Dkt. 14 at 37).

ALJ's finding as to the agency medical consultants' manipulative limitations opinions is supported by substantial evidence and sufficient medical evidence such that the record does not require further development.

Lastly, Plaintiff argues that she "apparently had some lumbar spine issues that may have also been impacting her functioning, as well as a claimed left ankle fracture that was not fixed surgically." (Dkt. 14 at 38.) According to Plaintiff, "a doctor should have performed a thorough examination of [Plaintiff} and offered opinions concerning her limitations from the combination of her impairments given the dearth of through [sic] examinations in this record by doctors once COVID-19 precautions began." (*Id.*) An ALJ is only required to further develop the record if there are "crucial" issues that are undeveloped. *See Grable*, 770 F.3d at 1201. Plaintiff's speculation as to the effect her lumbar spine issues and left ankle fracture "may" have had on her functioning does not demonstrate that the ALJ should have developed these issues further.

* * *

In sum, the Court finds the weight assigned to Dr. Steiner's and Dr. Jackson's opinions is supported by substantial evidence and met the articulation requirements; the ALJ's conclusion that a walker was not medically necessary was supported by substantial evidence; and the ALJ was not required to further develop the record as to the points raised by Plaintiff. The Court denies the request for remand on all of these grounds.

C.      **Erroneous Inferences and "Playing Doctor"**

Plaintiff argues that the ALJ made erroneous inferences and "played doctor" in several regards.  (Dkt. 14 at 39; Dkt. 19 at 13-14.)  The Court addresses these arguments below.

First, Plaintiff challenges the ALJ's statement that she cares for her dog because her dog died in July 2020.  (Dkt. 14 at 19.)  The Commissioner responds that the ALJ mentioned "pet care as one aspect relating to Plaintiff's functioning at step 3 and when comparing her alleged symptoms to other evidence."  (Dkt. 16 at 18 (citing R. 23, 30).)  The Commissioner further argues that the relevant period is July 2019 through August 2022, and since Plaintiff's dog died in July 2020, her dog care was within the relevant period.  (Dkt. 16 at 18.)  Plaintiff replies that the ALJ erroneously believed Plaintiff took care of her dog during the entire relevant period and "[t]he ALJ's blanket labeling of pet care during the relevant period, without discussion or recognition that was not true for the entire relevant period, was an erroneous inference the ALJ used to improperly discredit [Plaintiff's] reported limitations."  (Dkt. 19 at 13.)  Plaintiff asserts: "ALJs at these hearings should not be in the business of denying claims with rationales that include caring for a dog that died early in the relevant period of the claim."  (*Id.*)

The ALJ relied on the fact that Plaintiff reported caring for a dog in her Adult Function Report (R. 411-18) when assessing Plaintiff's ability to concentrate, persist, and maintain pace and when assessing the intensity and persistence of her symptoms and the extent to which they limit her capacity for work.  (R. 23, R. 30.)  Plaintiff's dog died in July 2020 (R. 1162), about one year into the three-year relevant period beginning on July

1, 2019 and ending with the ALJ's decision on August 26, 2022 (*see* Dkt. 19 at 13 & n.3). To the extent the ALJ erroneously believed Plaintiff cared for her dog for the entire three-year period, instead of just the first year, the Court is not persuaded that this "erroneous inference" requires remand.  First, it is undisputed that Plaintiff cared for her dog as stated in her Adult Function Report during the first year of the relevant period.  (R. 412.) Second, Plaintiff has not identified anything that suggests she would not have been able to care for her dog from July 2020 to August 2022 if her dog had still been alive.  Third, Plaintiff has cited no authority for the proposition that a claimant must engage in an activity of daily living for the entire relevant period for an ALJ to rely on that activity when assigning weight to symptoms.  "In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others **over a period of time** and the frequency, appropriateness, and independence of the activities must also be considered."  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (emphasis added) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)).  There is nothing in the record indicating there is any meaningful difference between taking care of a dog for one year or three years.  In sum, the Court will not reverse the weight an ALJ assigned to a claimant's symptoms based on activities of daily living simply because one of those activities stopped—not due to a disability, but due to the death of a pet—one-third of the way through the relevant period, when that one-third was a year.

Plaintiff next alleges "[t]he ALJ faulted [Plaintiff] for not always using a walker at doctor appointments" but disregarded Plaintiff's unmet goal as of July 2021 of walking

"up to 1 full block for exercise with the use of [a walker] or poles" and evidence that she "continued to need her walker during her occupational therapy appointments, for longer walking tasks." (Dkt. 15 at 39 (citing R. 23, R. 1955, R. 1994, R. 2042, R. 2070, R. 2083).)  As discussed above, the ALJ's conclusion that Plaintiff had not shown a documented medical need for a walker is supported by substantial evidence—including multiple medical records indicating that Plaintiff often used a cane in the community instead of a walker in the two months following her July 2021 discharge from physical therapy.  (R. 1994 (August 10, 2021 Occupational Therapy notes stating: "Uses walker in the house- uses cane in community (occasionally walker depending on the day)" and "Ambulation: primarily uses walker in home and SEC in community; depending on day and fatigue level may bring walker into community"), R. 2042 (same as of September 9, 2021), R. 2070 (same as of September 15, 2021), R. 2018 (same as of September 23, 2021).)  Remand is not required on this issue.

> Plaintiff argues:
>
> The ALJ imagined that [Plaintiff's] imaging and treatment without further surgeries did not support her claims while failing to note the myelomalacia noted in the January 2020 and October 2021 MRI reports.  Myelomalacia is often caused by cervical myelopathy and supported [Plaintiff's] reported limitations as well as the opinions of Dr. Jackson and Dr. Steiner.

(Dkt. 14 at 39; *see also* Dkt. 19 at 14 (arguing remand for additional review by a medical expert is required based on these findings).)

The ALJ identified "cervical myelopathy status-post disc replacement surgery" as one of Plaintiff's severe impairments.  (R. 20.)  To the extent Plaintiff suggests the ALJ erred by not noting specific findings in those MRI reports, Plaintiff has not identified any

evidence linking those findings to functional limitations.  As discussed above, the ALJ's findings as to Plaintiff's limitations based on her spasticity, sensory loss, and gait are supported by substantial evidence.  Remand is not required based on the ALJ's failure to discuss any myelomalacia noted in the January 2020 and October 2021 MRI reports.

**D.    The ALJ's Step Five Conclusion**

The Court turns to Plaintiff's step five arguments.  At step five, the Commissioner has the burden of proving the existence of other jobs in the economy a claimant can perform.  *See Porch v. Chater*, 115 F.3d 567, 571 (8th Cir. 1997); *see also Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014).  The Commissioner also has the burden of establishing that there exist significant numbers of jobs that the claimant can perform.  *See Boyd v. Colvin*, 831 F.3d 1015, 1021 (8th Cir. 2016).

In this case, the ALJ concluded, based on VE testimony, that Plaintiff could perform the three jobs of semiconductor bonder (22,000 jobs available nationally); circuit layout taper (10,000 jobs available nationally); and touch-up screener (26,000 jobs available nationally).  (R. 32.)  The ALJ further concluded that the 22,000 semiconductor bonder jobs available nationally constituted, taken alone, "a significant number of jobs in the national economy."  (R. 32).)

The Court first addresses Plaintiff's argument that the ALJ failed to show that the job of semiconductor bonder is found in significant numbers in the Plaintiff's region or in significant numbers in several regions of the country.[6]  (Dkt. 14 at 33-34.)  Congress has

---

[6]    A claimant does not have a disability if she can "engage in any other kind of substantial gainful work which exists in the national economy," where work in the

not defined "significant" in the Social Security Act, and the Commissioner has not defined this term in a rule. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). The Eighth Circuit has been content to leave "to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).

Citing *Ellison v. Sullivan*, Plaintiff argues that ensuring the ALJ is not improperly relying on an isolated job to deny benefits "requires ensuring there are at least some jobs at the regional level" and requires an ALJ to "identify the incidence of jobs in the region where a claimant resides if not the claimant is not able to perform the full range of sedentary work, as the ALJ found in this case." (Dkt. 14 at 32-33 (citing *Ellison v. Sullivan*, 921 F.2d 816, 822 (8th Cir. 1990); *Karen E. v. Kijakazi*, No. 21-cv-3015-CJW-MAR, 2022 WL 17548642, at *7-8 (N.D. Iowa Sept. 15, 2022).) Plaintiff also argues that: "The 22,000 jobs in the nation, with no state or region number identified, is under the Eighth Circuit's guidepost in *Weiler v. Apfel* of 32,000 jobs in the national economy, so the ALJ should have developed the record on this isolated jobs issue" because "it is the Commissioner's burden to show other jobs exist in significant numbers in the national economy that the claimant can perform, and that isolated jobs are not relied [sic] to deny a claimant benefits." (Dkt. 14 at 34 (citing *Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999).)

---

national economy means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

Plaintiff substantially overreads *Ellison*, which merely recounts the statement in SSR 83-12 that the VE should provide "a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." 921 F.2d at 821. Moreover, the VE in *Ellison* first offered **no** testimony regarding the prevalence of certain jobs the claimant could perform based on a certain exertional level with physical restrictions and then offered testimony that there were 30,000 jobs **locally** that the claimant could perform that met certain environmental limitations at a medium, light, and sedentary exertional level, but where the claimant could only do limited sedentary work. *Id.* at 821-22. The *Ellison* court then faulted the ALJ because "the VE did not identify any jobs in the local economy that Ellison was physically able to perform." *Id.* at 822. The Court does not read *Ellison* as imposing a broad requirement that a VE must always testify as to the number of jobs in the local economy, and at least one court has found that *Ellison* does not stand for the proposition that "number of such jobs in the region a person lives must also be identified because the RFC the ALJ articulated placed him at a less than sedentary level." *Joshua G. v. Kijakazi*, No. 22-CV-91-LRR-MAR, 2023 WL 6279534, at *12 (N.D. Iowa July 26, 2023).

Plaintiff's reliance on *Weiler* is similarly misplaced. In *Weiler*, the Eighth Circuit found that the VE's testimony that "that there are 32,000 surveillance monitor positions nationwide" constituted "substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which Weiler can perform." 179 F.3d at 1111. But *Weiler* did not hold that 32,000 was a "guidepost" or floor for such a finding, nor has the Eighth Circuit provided such a "guidepost" in any other case. "The

Eighth Circuit 'ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation.'" *Shari B. v. Kijakazi*, No. 22-CV-1539 (DJF), 2023 WL 6130679, at *8 (D. Minn. Sept. 19, 2023) (quoting *Hall*, 109 F.3d at 1259) (noting split among district courts in the Eighth Circuit and collecting cases); *see also Samantha M.A. v. O'Malley*, No. 22-CV-3119 (TNL), 2024 WL 841270, at 6-8 (D. Minn. Feb. 28, 2024) (same).  As the *Shari B.* court explained, "many courts appear to draw the line between a 'significant' and an insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs."  2023 WL 6130679, at *8.  As to the 22,000 semiconductor jobs, the Tenth Circuit has declined to remand where the claimant had "not established that 20,500 to 22,000 jobs is a 'very limited number' under 20 C.F.R. § 404.1566(b)."  *Garcia v. Comm'r*, SSA, 817 F. App'x 640, 649-50 (10th Cir. 2020) (cleaned up).  "Other courts have found that as few as 5,000 jobs nationally were sufficient to constitute a significant number of jobs."  *Karen E. v. Kijakazi*, No. 21-CV-3015 CJW-MAR, 2022 WL 17548642, at *7 (N.D. Iowa Sept. 15, 2022) (citing *Taskila v. Comm'r Soc. Sec.*, Case No. 14-12674, 2015 WL 5460712, at *2 (E.D. Mich. Sept. 16, 2015), *aff'd*, 819 F.3d 902, 906 (6th Cir. 2016) (6,000 jobs nationally is a significant number of jobs); *Mercer v. Halter*, No. Civ.A.4:00-CV-1257-BE, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (5,000 jobs nationally is a significant number of jobs).)  The Court concludes that, absent any evidence to the contrary, the evidence of 22,000

semiconductor bonder jobs nationally is sufficient to meet the ALJ's burden at step five.

Remand is not necessary on this ground.[7]

## IV.   ORDER

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**ORDERED** that:

1.      Plaintiff Tanya S.'s request that the Court reverse and remand the

Commissioner's decision in this matter (Dkt. 14) is **DENIED**;

2.      Defendant Commissioner of Social Security Administration, Martin J.

O'Malley's request that the Court affirm the Commissioner's decision in this matter (Dkt.

16) is **GRANTED**;

3.      The Remote Announcement of Decision Hearing set for 9/16/2024 at 2:00

PM (Dkt. 20) is **CANCELLED**; and

4.      This case is **DISMISSED WITH PREJUDICE**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 19, 2024                    *s/Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge

---

[7]      Because the Court finds remand is not necessary as to the 22,000 semiconductor bonder jobs, the Court need not reach whether the ALJ committed a "*Kemp/Moore* SSR 00-4P Error" with respect to the reaching requirements for the circuit layout taper and touch-up screener jobs.